UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANK EMILIO BLANCO CRUZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF NORTHWEST ICE PROCESSING CENTER ET AL.,<br><br>Respondents. | CASE NO. 2:26-cv-03533-JHC<br><br>ORDER |

## I
## Introduction

This matter comes before the Court on Frank Emilio Blanco Cruz's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the petition, the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the petition.

## II
## Background

Petitioner is a native and citizen of Cuba. Dkt. # 1 at 3. He entered the United States on June 20, 2024, and was paroled the same day into the country under the Immigration and Nationality Act (INA) § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). *Id.* at 1. He then obtained employment in Florida as a truck driver. *See id.* at 4. Critically here, Petitioner also applied for

adjustment of status, which would grant him permanent residency under the Cuban Adjustment Act. *See id.* at 5; Dkt. # 2 at 65. He presents two separate I-94 admission records created by U.S. Customs and Border Protection, with one showing an "Admit Until" date of June 12, 2025 and the other showing an "Admit Until" date of June 19, 2026. *See* Dkt. # 2 at 14, 66. According to the Government, however, Petitioner's parole automatically expired on June 12, 2025. Dkt. # 8 at 4.

On July 15, 2026, Petitioner was arrested on a Florida bench warrant. Dkt. # 1 at 6; *see also* Dkt. # 8 at 4. He was then transferred into ICE custody, placed in removal proceedings, and transferred to the Northwest ICE Processing Center (NWIPC), where he remains detained today. Dkt. ## 1 at 6; 8 at 2, 5. Petitioner then filed the instant Petition for Writ of Habeas Corpus. *See* Dkt. # 1.

## III
## Discussion

Federal district courts may grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner claims that his detention without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution. *See* Dkt. # 1 at 9–10.

First, the Court determines the statutory authority governing Petitioner's case. The Government claims that Petitioner is held under 8 U.S.C. § 1225(b)(2), as Petitioner was granted parole and therefore never "admitted" into the country. Dkt. # 8 at 6. And so, it says, Petitioner is subject to mandatory detention. The Court agrees. "Parole is a 'legal fiction' allowing a noncitizen 'to be physically present in the United States for a specific purpose.'" *Ndiaye v.*

*Blanche*, 2026 WL 2468275 (W.D. Wash. Aug. 21, 2026) (quoting *Barney v. Rogers*, 83 F.3d 318, 320 n.1 (9th Cir. 1996)). And under Supreme Court precedent, parolees (and noncitizens whose parole has expired) are treated as "applicants for admission" and subject to mandatory detention when parole expires or is revoked. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018); 8 § U.S.C. 1182(d)(5)(A) (requiring that once parole expires, the noncitizen "shall forthwith return . . . to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.").

Still, any detention scheme—mandatory or not—must satisfy the Due Process Clause. *See, e.g.*, *Singh v. Noem*, 2026 WL 925627, at *2 (W.D. Wash. Apr. 6, 2026) ("The Due Process Clause applies to [Petitioner] . . . regardless of whether he is subject to detention under § 1225(b)(1), § 1225(b)(2), or § 1226(a)."). This Court turns therefore to Petitioner's constitutional argument.

Petitioner claims his re-detention violated his right to due process under the Fifth Amendment of the U.S. Constitution. *See* Dkt. # 1 at 9–11. The Fifth Amendment prohibits the federal government from depriving any person "of life, liberty, or property, without due process of the law[.]" U.S. Const. amend. V. The right to due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases). This includes petitioners paroled into the United States. *Padilla v. United States Immigr. & Customs Enf't*, 2026 WL 2822044, at *19 (9th Cir. Sept. 21, 2026).

The traditional test for evaluating due process claims established by *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1206 (9th Cir.

2022).[1] "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process generally requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The *Mathews* factors favor Petitioner. As for the first, Petitioner has an unquestionable liberty interest in being free from detention. *See, e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (explaining that freedom from detention "is the most elemental" of private interests affected by official action); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects"); *Bd. Of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing that government action can create a liberty interest protected by the Due Process Clause); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (explaining that a

[1] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In doing so, the Court recognized that: (1) other circuits have applied *Mathews* to due process challenges to immigration proceedings; (2) the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings"; and (3) the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id*. at 1206. More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, at *2–3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, at *7–8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, at *2–4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* factors here.

release's conditionality "is valuable and must be seen as within the protection of the [Due Process Clause]").

Petitioner has "unquestionably gained a foothold in this country and developed the connection needed to become 'a part of our population.'" *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1084 (N.D. Cal. 2025) (quoting *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903)). Petitioner has obtained employment as a truck driver, applied for permanent residency, and has family members within the United States. Dkt. # 2 at 3, 65; Dkt. # 1 at 6. These actions create "a vested liberty interest in remaining free from detention." *Bruny v. Warden, Desert View Det. Facility*, 2026 WL 2447161, at *4 (C.D. Cal. Aug. 19, 2026).

The Government does not dispute these facts or the principle that freedom from detention represents a serious liberty interest. *See* Dkt. # 8 at 8 ("Federal Respondents recognize the weighty liberty interests implicated by the Government's detention of noncitizens[.]"). Instead, it argues that Petitioner's parolee status inherently diminishes his liberty interests. *Id.* at 9. And since his parolee status expired "without . . . [his] applying for a change in his immigration status or seeking an extension of his parole[,]" the Government says Petitioner's liberty interests remain weak. *Id.* at 9.

As the Court understands the record, however, the Government cannot support the latter assertion. Documents provided by Petitioner list June 19, 2026 as the "Admit Until" date, meaning that his parole was (somehow) extended for almost a year. *See* Dkt. # 2 at 65. This extension also means that when Petitioner applied to change his immigration status, he did so before his parole expired. *See* Dkt. # 2 at 65 (U.S. Citizenship and Immigration Services receipt of application dated July 7, 2025). And while the Court acknowledges that a noncitizen's parolee status may diminish the liberty interests in question, *see Pantoja Sanchez v. Hernandez*, 2026 WL 1506130, at *3 (W.D. Wash. May 29, 2026), the Ninth Circuit has held that regardless

of the legal fiction governing a noncitizen's immigration status, "[t]he limits on noncitizens' due process rights . . . apply only to individuals on the threshold of initial entry, not individuals well within the country's borders and present for days, weeks, months, or years." *Padilla*, 2026 WL 2822044, at *11; *see also Caisa Telenchana v. Hermosillo*, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026) ("[w]here, as here, a noncitizen has lived with relative freedom in the United States for years, the Constitution does not countenance fictional erasure of her actual presence in this country—or her concomitant due process rights") (internal quotation marks and citations omitted); *see also Kumar v. Noem*, 2026 WL 668335, at *4 (W.D. Wash. July 28, 2026) ("District courts in the Ninth Circuit have also recognized that a 'petitioner's liberty interest [does] not expire along with his parole.'"). Therefore, the first *Mathews* factor favors Petitioner.

The second *Mathews* factor also favors Petitioner, as the risk of erroneous deprivation remains high. This factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. "[T]he central issue here is the process by which re-detention occurred, not whether it was warranted." *Pedro Garcia Radillo v. Scott*, 2026 WL 2168044, at *6 (W.D. Wash. July 28, 2026) (quoting *Gill v. Noem, et al.*, 2026 WL 686134, at *3 (W.D. Wash. Mar. 11, 2026).

In the abstract, the Court can appreciate the Government's argument that when parole expires, the following detainment would be straightforward. Dkt. # 8 at 9. And indeed, other courts in this District have arrived at that conclusion. *Cf. Kleber Vasquez v. Hernandez*, 2026 WL 2936770, at *4 (W.D. Wash. Sept. 30, 2026). But this argument necessarily presumes that the Government maintains a base level of accuracy and prudent record-keeping. *See Dieng v. Hermosillo*, 2026 WL 411857, at *8 (W.D. Wash. Feb. 13, 2026) ("The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus

depriving the noncitizen of process due prior to being detained"); *United States v. Strickland*, 601 F.3d 963, 976 (9th Cir. 2010) (Berzon, J., dissenting) ("As we have recognized, elementary oversights in data entry can result in unconstitutional deprivations of liberty."). The record submitted to this Court, unfortunately, has a number of discrepancies. The Court cannot determine with any certainty the date of Petitioner's entry,[2] when Petitioner's parole expired,[3] and whether Petitioner applied to adjust his status prior to his parole's expiration.[4] Nor does the Government's pleading indicate awareness of these discrepancies. If the Court cannot determine basic and crucial facts from this case—which are important and necessary to properly consider the *Mathews* test—then this Court must conclude that proceeding to detain Petitioner without a pre-deprivation hearing risks the same types of errors as made here. Therefore, the second *Mathews* factor favors Petitioner.

As for the third factor, the Court acknowledges the Government's "heightened [ ] interest in the immigration detention context[.]" Dkt. # 8 at 10 (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)). It also appreciates the Government's more general interest in "preventing danger to the community." *See Zadvydas*, 533 U.S. at 690. But the Ninth Circuit has held that the Government "has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Here, the Government has no interest in detaining

---

[2] *Compare* Dkt # 8 at 4 ("Petitioner . . . applied for admission to the United States at the Miami, Florida Airport Port of Entry on June 20, 2024"), *with* Dkt. # 10-1 at 2 (DHS I-862 form claiming Petitioner "arrived at Miami Airport Port of Entry on March 18, 2023").

[3] *Compare* Dkt. # 8 at 4 ("[Petitioner's] parole automatically terminated in June 2025"), *with* Dkt. # 2 at 66 (CBP I-94 form showing an "Admit Until" date of "6/19/2026").

[4] The Government asserts Petitioner "did not file an application for adjustment of status before the . . . expiration of his parole." Dkt. # 8 at 4. But Petitioner filed for an adjustment of status and his application was received on July 7, 2025, *see* Dkt. # 2 at 65, about 11 months before the June 19, 2026 "Admit Until" date. *See* Dkt. # 2 at 66.

Petitioner, who does not have any serious criminal history nor presents a flight risk. Dkt. # 1 at 7. The record before the Court shows that Petitioner was cited for driving with a suspended license, which cannot by itself be considered dangerous. Dkt. # 11 at 3. The Government can also be "reasonably assured" that Petitioner will appear at future immigration proceedings without detention. *Hernandez*, 872 F.3d at 994. While Petitioner was arrested in Florida based on a bench warrant stemming from the suspended license charge, his explanation of missing Court due to his recovery from an accident is credible. *See Dkt. # 11 at 3* (explaining that "hospitalization[] and delayed receipt of the court papers" led to failure to appear). And state court issues aside, he has been prompt in addressing his immigration matters, which is more relevant to this Court. Petitioner has applied for an adjustment in status, attended a USCIS biometrics appointment to advance his status adjustment, and maintained "no failures to appear for any immigration hearing." Dkt. # 1 at 4. Petitioner also argues that his pending permanent residency application "demonstrates a concrete incentive for Petitioner to appear at all future proceedings[.]" *Id.* at 5. The Court agrees. Therefore, the third *Mathews* factor favors Petitioner.

In sum, the three *Mathews* factors favor the Petitioner. The Court thus concludes that the Government's re-detention of Petitioner with insufficient notice and opportunity to be heard violated his constitutional right to due process under the Fifth Amendment. As a result, Petitioner has proven be a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and is entitled to habeas relief. 28 U.S.C. § 2241(c).

## IV
## CONCLUSION

For these reasons, the Court GRANTS the Petition for Writ of Habeas Corpus (Dkt. # 1) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to reasonable conditions of release. The Court further ORDERS that Petitioner shall not be re-detained unless and until he is provided with adequate notice and a hearing before a neutral decisionmaker.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 20th day of October, 2026.

John H. Chun
United States District Judge